UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | Criminal No. 21-cr-00431 (RDM) |
| VINCENT FORREST, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

From April 2019 to August 2019, putting profit over the public interest, Defendant Vincent Forrest ("defendant" or "Forrest") abused his official position for his personal gain. Forrest, a patrol officer with the Metropolitan Police Department ("MPD"), received more than $15,000 in cash bribes to unlawfully provide non-public police information identifying approximately 2,667 individuals involved in traffic accidents. That information was provided to Raquel DePaula, a "runner," who operated a for-profit business, which connected accident victims with lawyers and doctors. Forrest's conduct corrupted the MPD and its policy of protecting accident victim confidentiality. This breach of the public trust merits significant punishment – to punish the crime, deter it, and protect the integrity of local government. Forrest's failure to accept responsibility, his numerous false statements to law enforcement and this Court, and his inability to comply with his conditions of release and the orders of this Court, merit a custodial sentence at the high-end of applicable United States Sentencing Guidelines (U.S.S.G. or "Guidelines").

**I.      The Defendant's Bribery Scheme**

On June 24, 2021, a grand jury in the District of Columbia returned an indictment charging Forrest and DePaula with Conspiracy, in violation of Title 18, United States Code, Section 371, and Bribery, in violation of Title 18, United States Code, Section 201(b). ECF No. 7. In addition,

Forrest was charged with Making a False Statement, in violation of Title 18, United States Code, Section 1001. *Id.* On January 11, 2024, following a three-day trial, Forrest was convicted on all counts.

During the period relevant to his crimes, Forrest served as a Patrol Officer in MPD's Seventh District Police Station. There, Forrest had access to COBALT, an online electronic record management system utilized by MPD to manage reports for all incidents handled by MPD officers. This included MPD Traffic Crash Reports, which contained information about individuals involved in traffic crashes in the District of Columbia, including their names, addresses, telephone numbers, and other identifying information.

As the evidence at trial proved, beginning in approximately April 2019, Forrest conspired to commit bribery with Raquel DePaula, a "runner," who was in the business of soliciting accident victims on behalf of lawyers. DePaula was able to identify potential clients by obtaining police reports of recent traffic accidents, referred to as Traffic Crash Reports. Before 2015, these reports were publicly available and could be obtained from a clerical office at MPD. In January 2015, however, MPD issued a general order restricting the distribution of Traffic Crash Reports to persons involved in a crash and certain family members and representatives. The order aimed to protect crash victim confidentiality and limit solicitations by "runners."

To circumvent the general order, DePaula began paying Forrest cash in exchange for him providing information contained in Traffic Crash Reports, to which he had access by virtue of his employment at MPD. DePaula paid Forrest approximately $600 to $1,300 per week, in exchange for the victim contact information. Over the four months Forrest was engaged in the scheme, he received more than $15,000. In exchange, Forrest accessed the reports and, via WhatsApp, an encrypted messaging service, transmitted the information to DePaula. These WhatsApp

communications contained the Traffic Crash Reports' essential information, including crash victims' identity and contact information.  Forrest would also provide information regarding the nature of the crash, including whether it caused an injury or property damage, and was a hit and run.

An audit conducted by MPD revealed that between April 14, 2019, and August 17, 2019, Forrest had accessed Traffic Crash Reports 4,385 times.  Gov. Exs. 1 & 52.[1]  Indeed, even on the 40 days he was off-duty, Forrest came into the station and accessed 1,691 Traffic Crash Reports.  Gov. Ex. 54.  Each time Forrest accessed the COBALT system to harvest information from these reports for personal profit, he victimized the community, eroded public confidence, and corrupted the MPD.  Forrest did this for one reason – because he cared more about the extra cash in his pocket than the laws he swore to uphold.

On August 19, 2019, Forrest was interviewed by law enforcement regarding his use of COBALT and his harvesting of Traffic Crash Report information.  Rather than providing truthful information that could have assisted the Government in its investigation of DePaula, Forrest lied – repeatedly.  Forrest falsely stated that: (1) he did not provide Traffic Crash Report information to a third party (Gov. Exs. 7A, 7B); and (2) he did not have any outside employment or sources of income (Gov. Ex. 7D).  Forrest admitted that he knew it was a crime to lie to law enforcement and that it was illegal to provide confidential police information, but he lied nonetheless to obstruct the Government's investigation and conceal his criminal conduct.  (Gov. Exs. 7F, 7G).

II.     **The Sentencing Guidelines and Forfeiture**

The Probation Office has calculated, and the Government agrees, that Forrest's total offense level under the Guidelines is 20.  PSR ¶ 104.  The PSR grouped the convictions for Counts

---

[1] The Government's references to exhibits are the Government's trial exhibits.

3

1 (Conspiracy), 3 (Bribery) and 4 (False Statements), pursuant to U.S.S.G. § 3D1.2(b).[2]  PSR ¶¶ 89-94.  This total offense level includes a base offense level of 14, pursuant to U.S.S.G. § 2C1.1(a)(1), an additional 2 levels because the offense involved more than one bribe, pursuant to § 2C1.1(b)(1), and an additional 4 levels because the value of the payment was more than $15,000 but less than $40,000[3], pursuant to § 2C1.1(b)(2) and § 2B1.1(b)(1)(C).  PSR ¶¶ 95-97.  In addition, the PSR concludes and the Government agrees, that, pursuant to U.S.S.G. §3C1.1, Forrest should receive a 2-level increase for obstruction of justice due to his perjurious testimony at trial.  PSR ¶¶ 83, 100.

The defendant does not have a prior criminal conviction, so his criminal history category is I.  PSR ¶ 107.  Because the defendant meets the criteria under U.S.S.G. §§ 4C1.1, he is a Zero-Point Offender, and his offense level is reduced by two levels.  The applicable advisory Guidelines range is therefore 33 to 41 months.  PSR ¶ 156.

### III.     Government's Response to Forrest's Objections to the PSR

On May 22, 2024, Forrest filed his objections to the PSR.  Specifically, he argues that (1) the loss amount was less than $6,500, resulting in no enhancement; and (2) the enhancement for obstructing or impeding the investigation is inapplicable.  Forrest's objections to the PSR are not consistent with the testimony adduced or evidence presented at trial nor the law.  Facts relevant to sentencing must generally be proven by a preponderance of the evidence.  *See* U.S.S.G. § 6A1.3 cmt.; *see also United States v. Watts*, 519 U.S. 148, 156 (1997) (*per curiam*).  The evidence, sentencing guidelines, and case law all support the applications of the enhancements in the PSR.  Specifically, Forrest should receive a four-level enhancement for a loss amount more than $15,000,

---

[2] The Government believes that Count 4 could also have been grouped with Counts 1 and 3 pursuant to U.S.S.G. § 3D1.2(c).  Under either provision, the offense level guideline calculation remains the same.

pursuant to U.S.S.G. § 2B1.1(b)(1)(C), and a two-level enhancement for obstructing or impeding the due administration of justice, pursuant to U.S.S.G. § 3C1.1.

### a. Forrest received more than $15,000 from his sale of traffic report information.

The evidence is that Forrest received more than $15,000 in bribes from DePaula. *First,* DePaula testified that she paid Forrest in cash because it was not traceable. *See* Transcript 35:19-24, Jan. 8, 2024 (AM) (DePaula). *Second*, DePaula testified at trial that she provided Forrest with $1,200 to $1,800 each week, depending on the amount of victim contact information he provided. *See* Transcript 34:22-35:3; 71:7-10, Jan. 8, 2024 (AM) (DePaula); Transcript 12:14-19, Jan. 8, 2024 (PM) (DePaula). Indeed, Forrest admitted to meeting with DePaula once a week. *See* Transcript 59:17-19, Jan. 9, 2024 (AM) (Forrest). *Third*, DePaula testified that, over the course of the conspiracy, she paid Forrest over $15,000 in cash for contact information for 2,667 victims. *See* Transcript 119:10-17, Jan. 8, 2024 (AM) (DePaula).[4] *Fourth*, DePaula's testimony as to the total amount of her payments is consistent with text messages that show Forrest and DePaula met on at least 18 occasions for payment. *See* Government Ex. 6; Government Demonstratives 4 & 5. The evidence establishes that, at a minimum, Forrest was paid $21,600 ($1,200 x 18).

Forrest ignores this evidence and argues that no enhancement should apply because there is "no direct evidence supporting [the] proposition" that he deposited $6,500 or more of bribes into his bank account. Whether Forrest deposited the money into his bank account is immaterial. At trial, the Government introduced bank statements to simply show that, on a limited number of occasions, Forrest deposited cash into his account contemporaneous to his meetings with the DePaula. Because Forrest admitted that he had no other employment, the cash deposited into the account was consistent with coming from an illicit source, DePaula. However, the Government

---

[4] This was the loss amount that the Court accepted for purposes of DePaula's sentencing.

5

never argued that Forrest deposited every dollar or even most of his illicit proceeds, nor was it required to prove what Forrest did with the bribes for the enhancement to apply.

For the reasons set forth above, Forrest should receive a four-level enhancement for a loss amount more than $15,000, pursuant to U.S.S.G. § 2B1.1(b)(1)(C)

### b. Forrest attempted to and did obstruct and impede the due administration of justice.

Forrest sought to obstruct his prosecution by committing perjury during his trial on January 9, 2024. The PSR correctly determined that this Court should apply Section 3C1.1's two-level enhancement for obstruction of justice as a result of his perjurious testimony at trial. PSR ¶ 83. This enhancement applies if "(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense." U.S.S.G. § 3C1.1. The Application Notes to this section provides examples of conduct that warrant this enhancement, to include "committing, suborning, or attempting to suborn perjury." U.S.S.G. § 3C1.1 App. note 3(b). The Court can apply the two-level enhancement if it finds that Forrest attempted to obstruct the due administration of justice through his false testimony

In order for this adjustment to apply to the Forrest's trial testimony, the Court must find that the defendant (1) gave false testimony, (2) concerning a material fact, (3) with the intent to deceive, rather than as a result of confusion, mistake or faulty memory. *See United States v. Dunnigan*, 507 U.S. 87, 94 (1993); *United States v. Smith*, 374 F.3d 1240, 1245 (D.C. Cir. 2004). False statements amounting to perjury have "obvious relevance" to sentencing because they "reflect[ ] on a defendant's criminal history, on her willingness to accept the commands of the law and the authority of the court, and on her character in general." *Dunnigan*, 507 U.S. at 94. At

6

trial, Forrest deliberately and repeatedly lied on the stand about material facts. Forrest's lies were not caused by "confusion, mistake, or faulty memory," but by a calculated and repeated attempt to obstruct justice.

*First*, Forrest claimed that he was initially contacted by DePaula due to her interest in firearms and the fact that Forrest was a firearms instructor. Transcript 27:13-29:3, Jan. 9, 2024 (Forrest). However, the testimony of DePaula and all of the evidence makes clear that Forrest was contacted by DePaula to provide traffic crash report information in exchange for cash. *See* Gov. Ex. 6; Transcript 33:2-35:20, Jan. 8, 2024 (DePaula).

*Second,* Forrest repeatedly lied about the reason DePaula was paying him cash. Forrest lied throughout his direct examination and cross-examination when he stated that he was not paid to provide DePaula traffic crash information. *See* Transcript 34:21-35:1; 48:16-49:1; 54:4-13; 55:16-18; 60:8-10; 70:14-30; 73:17-19; 74:6-7; 77:17-20, Jan. 9, 2024 (Forrest). Forrest also lied when he claimed that he did not meet up with DePaula for the purpose of receiving payment. *See* Transcript 52:10-52:17; 58:23-25, Jan. 9, 2024 (Forrest). The WhatsApp messages between DePaula and Forrest, contained in Government Exhibit 6, make two things clear: that Forrest was being paid to provide DePaula with traffic crash victim information, and that the reason for the in-person meetings was to receive payment.

*Third,* during his trial testimony on January 9, 2024, Forrest continued to lie about the reason for his excessive use of COBALT. Forrest again claimed that he reviewed so many Traffic Crash Reports due to his general interest in reforming the traffic crash reporting system at MPD. *See* Transcript 61:14-62:5, Jan. 9, 2024 (Forrest). There is simply no support for this assertion and, as the evidence at trial established, Forrest's excessive use of COBALT started the day he was contacted by DePaula and was for the sole purpose of accepting bribes in exchange for selling

this confidential information.

*Fourth*, although not related to a material fact or a basis for the enhancement, Forrest falsely claimed that he had been deployed in the military. *See* Transcript 12:17-24, Jan. 9, 2024 (Forrest). This bold-faced lie – a clear effort to garner sympathy from the jury –shows that Forrest was willing to say anything that might persuade a juror to acquit him. Indeed, Forrest not only claimed to have served in the armed forces but appears, based on what transpired at trial, to have told his attorney that he had been shot while serving in Iraq and again while serving in Afghanistan. *See id.* at 10:9-11:17. Defense counsel, relying on his client's representations, started to illicit this testimony from Forrest, but both stopped after the Government objected and brough to the Court's and defense counsel's attention that there were no records to support these assertions, that pretrial services had no record of his deployment while on supervised release, and deployment abroad as well as possession of firearms would have violated Forrest's conditions of release. *See id.*

In his objections to the PSR, Forrest argues that his defense, and the testimony supporting it, was simply that he provided the traffic crash report information to DePaula and received payments from her, but that he didn't know such conduct was illegal. That argument is not consistent with the totality of the false testimony. As discussed above, Forrest repeatedly lied when he stated that: (1) he met her to provide firearms and personal security training; (2) that he did not receive payments from DePaula for the traffic crash victim information; (3) that he did not meet with her to collect payments for the information; and (4) that he reviewed traffic crash reports as an effort to reform and improve the system. Forrest's false statements were not the result of confusion, mistake, or a faulty memory, as suggested in his objections to the PSR. Rather, Forrest's false testimony was part of a willful attempt to obstruct the due administration of justice in hopes of obtaining an acquittal. These statements were a deliberate effort to provide materially

8

false information to the jury and, as a result, Forrest should receive a two-level increase pursuant to §3C1.1 for obstructing or impeding the administration of justice should apply.

**IV.     A sentence at the high-end of the guidelines is consistent with the factors set forth in 18 U.S.C. § 3553(a).**

The goal of sentencing is to impose a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). To determine such a sentence, the Court, after accurately calculating the defendant's advisory Guidelines range, must consider the factors set forth in § 3553(a). *Gall v. United States*, 552 U.S. 38, 49-50 (2007). These factors include the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to promote respect for the law and adequate deterrence. 18 U.S.C. § 3553(a). Here, the § 3553(a) factors and the defendant's conduct supports a sentence of imprisonment at the high-end of the guidelines.

*First*, the nature and circumstances of the offenses were serious. Forrest's crime was damaging and extended over several months. By participating in this criminal scheme, Forrest allowed his co-conspirator to sidestep an MPD policy intended to protect crash victims' identities and personal information and prevent solicitation shortly after a crash. Forrest did not accept a one-off bribe; he accepted bribes routinely and repeatedly, week after week, for more than four months. Further aggravating the seriousness of the offense and illustrating the defendant's corrupt intent is the fact that, even after being confronted by law enforcement about his conduct, he continued to lie – in August 2019 during an interview and four-and-half years later, in January 2024, during trial.

Further, Forrest's bribery undermined the public's trust in MPD, an important local government institution responsible for protecting the public from crime, not facilitating it.

Forrest's bribery also thwarted a policy aimed at keeping the personal information of traffic accident victims out of the hands of individuals who sought to solicit victims based on their unfortunate circumstances.  It is exceedingly serious that Forrest was essentially a police department official put on a secret payroll for the specific purpose of providing confidential information and evading a policy aimed at protecting that information.  The nature and circumstances of such an offense support sentence of imprisonment at the high-end of the guidelines.

*Second*, a sentence of imprisonment at the high-end of the guidelines in this case would promote respect for the law and provide adequate general deterrence against corruption.  *See, e.g.*, *United States v. Kuhlman*, 711 F.3d 1321, 1328 (11th Cir. 2013) (noting that "an important goal of sentencing in a white-collar crime prosecution" is "the need for general deterrence"); *see also United States v. Morgan*, 2015 WL 6773933, 635 Fed. Appx. 423, 450-51 (10th Cir. Nov. 6, 2015) (emphasizing the importance of general deterrence in public corruption cases, especially those involving elected officials (which this case admittedly does not involve)).  The defendant's participation in this bribery scheme betrays MPD's, along with other local government institutions', vulnerability to corruption.  That vulnerability can be reduced through adequate general deterrence.  It is important to the public welfare that public officials susceptible to corruption understand the seriousness of criminal violations of the public trust and know that such offenses will be met with significant punishment.  Likewise, the public should have confidence that the criminal justice system will protect its public institutions by holding those who set out to corrupt them appropriately accountable.  Imposing a sentence of imprisonment at the high-end of the guidelines will achieve those aims, promoting respect for the law and deterring similar crimes.

*Third*, incarceration is the only kind of sentence that will have any meaningful impact on

Forrest, who has repeatedly thumbed his nose at the rule of law. The facts of this case, Forrest's history and characteristics, and the sentencing guidelines are not consistent with a sentence at the low-end of the guidelines, and certainly not probation. Forrest's prosecution is not comparable to any other police officer who was charged for similar conduct in this investigation. Unlike MPD Officers Aaron Willis (six months' home confinement and six months' intermittent confinement) and Kendra Coles (78 days intermittent confinement[5]), Forrest continued to lie to law enforcement when confronted, failed to accept responsibility for his actions, provided false testimony during trial, and failed to abide by the conditions of his supervised release.

  Further, as the Court is aware, Forrest has a documented and consistent track record of failing to comply with the conditions of his supervision and having a less than casual relationship with the truth regarding his supervision when appearing before this Court and its officers. For instance, on eight separate occasions Forrest failed to report to pretrial services as directed. *See* PSR ¶¶ 9-13. Forrest also failed to comply with the directives of his pretrial services officer when he was instructed not to attend a "work function" at the Maryland Live Casino. *See* PSR ¶ 14. Despite the explicit prohibition from pretrial services, who also relayed the directive to Forrest's counsel, Forrest ignored the instructions and went to the casino. Only a sentence of significant incarceration will afford adequate specific deterrence to Forrest.

  *Fourth*, Forrest has shown a general disregard for the law beyond the bribery scheme, which will only be impacted by a significant custodial sentence. *See United States v. Settles,* 530 F.3d 920, 923 (D.C. Cir. 2008) ("[L]ong-standing precedents of the Supreme Court and this Court establish that a sentencing judge may consider uncharged or even acquitted conduct in calculating

---

[5] Due to BOP policy related to intermittent confinement during Covid and as result of her compliance with her conditions of supervised release, Ms. Coles, a cooperating witness, had her sentence of intermittent confinement converted to 1200 hours of community service.

11

an appropriate sentence, so long as that conduct has been proven by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction."); *see also United States v. Santiago*, 495 F.3d 820, 825–26 (7th Cir. 2007) (upward variance reasonable for defendant convicted of possession of crack cocaine with intent to distribute and with unlawful possession of ammunition by a felon where sentencing judge found by a preponderance of the evidence that defendant had participated in an unrelated and uncharged murder, which the Court considered in evaluating the 18 U.S.C. § 3553(a) sentencing factors).

As of August 19, 2019, due to the pending public corruption investigation at the time, Forrest was placed on desk duty and his firearm was confiscated. According to MPD, after that point in time, Forrest did not have lawful authority to carry a firearm, as his police powers were revoked, and he did not have a concealed carry permit. Nonetheless, on the evening of May 22, 2021, Forrest and several other individuals were hanging out in the parking lot of Paradise at Parkside Apartments in Washington, D.C. *See* Government Exhibits 1 and 2. That evening, gunshots rang out from inside a nearby building where a homicide occurred. At that time, Forrest, who appeared to have been drinking, was seen on surveillance footage ducking behind a car and pulling a silver firearm from his waist. Forrest never identified himself to police officers who responded to the scene. Forrest's conduct that night is consistent with his general. It is not that Forrest is unaware of the laws he swore to uphold – as demonstrated by his conduct – he simply does not think that these laws apply to him.





**CONCLUSION**

For over four months, Forrest was on the off-the-books payroll of a "runner," corrupting the police department and undermining a policy aimed at protecting the confidentiality of accident victims. Forrest's corruption along with his perjurious testimony and obstruction of justice warrants significant punishment – to punish the crime, deter it, and safeguard the public trust. The Government therefore recommends that the Court impose a sentence imprisonment at the high-end of the guidelines.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By: */s/ Joshua S. Rothstein*
Joshua S. Rothstein
Assistant United States Attorney
N.Y. Bar Number 4453759
Madhu Chugh
Assistant United States Attorney
D.C. Bar Number 992122
601 D Street, N.W.
Washington, D.C. 20537
Rothstein: 202-252-7164
Joshua.Rothstein@usdoj.gov